# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER STEPHENSON | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 21-0709 |
| **v.** | : | |
| | : | |
| AT&T SERVICES, INC. | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    AUGUST 13, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Peter Stephenson ("Plaintiff") brings this action against Defendant AT&T Services, Inc. ("Defendant" or "AT&T") averring claims of retaliation and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* (the "PHRA"). [ECF 1]. Before this Court is Defendant's motion to compel arbitration filed pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq,* [ECF 4], Plaintiff response in opposition, [ECF 9], and Defendants reply, [ECF 11]. The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendant's motion to compel arbitration is granted.

**BACKGROUND**

The facts relevant to the validity and enforceability of the arbitration agreement are set forth below and are construed in the light most favorable to the non-movant—here, Plaintiff:[1]

Plaintiff was employed by AT&T from 2002 until he was terminated in 2018. [Compl. at ¶¶ 17, 55]. During this tenure, Plaintiff held several positions in

---

[1]     The facts set forth are drawn from the complaint, the parties' briefs and exhibits attached thereto, and the parties' sworn declarations.

the area of technical sales support and was responsible for supporting various facets of Defendant's field sales teams.  In late 2011, AT&T instituted a voluntary arbitration program and sent a Management Arbitration Agreement (the "Arbitration Agreement") to the AT&T-issued email inboxes of all United States management employees.  [Def.'s Mot. at 2].  To communicate the arbitration materials to its employees, AT&T utilized a software program called "Promenta," which allowed AT&T personnel to enter text and hyperlinks into the body of an email and select large groups of recipients.  [Declaration (Decl.) of Brandy Giordano at ¶ 9].  This Promenta System shows that three emails, with the subject line "Action Required: Arbitration Agreement", were sent to Plaintiff's work email: on December 3, 2011, on December 16, 2011, and on January 18, 2012.  [Decl. of Brandy Giordano, Ex. 3].

The three emails informed Plaintiff that under the arbitration program, employees and AT&T would use third-party arbitration, rather than courts, to settle disputes. [Decl. of Brandy Giordano, Ex. 1].  The emails—and the Agreement—advised Plaintiff that the program was completely optional, that he could follow the bolded instructions and hyperlink to opt out if he chose, and that he would suffer no adverse employment consequences for choosing to opt out of the Agreement. [Decl. of Brandy Giordano, Ex. 1].  Additionally, the emails listed a "hotline" for reporting any pressure to participate in the program, and another number for any questions regarding the Agreement.  [Decl. of Brandy Giordano, Ex. 1].  In bold letters, the emails indicated that: **"[I]t is very important for you to review the Management Arbitration Agreement linked to this email,"** and that 11:59 PM Central Standard Time, February 6, 2012, was the deadline to opt out.  [Decl. of Brandy Giordano, Ex. 1 (emphasis in original)].

The linked Arbitration Agreement provides that it applies to "any claim" against "any AT&T company," and further specifies that "covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company," including claims under the "Age Discrimination in Employment Act" and "state statutes and local laws, if any, addressing the same or similar subject matters[.]"  [Decl. of Brandy Giordano, Ex. 2].

Plaintiff did not opt out by the deadline, [Decl. of Brandy Giordano at 6], and continued to work for AT&T for six more years.  [Compl. at ¶ 55].  Plaintiff contends that he has "no recollection of receiving, viewing, or opening an e-mail from [AT&T] regarding [the Agreement]," nor any "recollection of receiving, viewing, or opening the 'reminder' e-mails that [AT&T] allegedly sent on December 16, 2011, and on January 18, 2012, regarding the [Agreement]."  [Pl.'s Decl. at 2].  Plaintiff also contends, and AT&T does not dispute, that AT&T placed storage limits on some of its employees' mailboxes, including Plaintiff's, that would "freeze" the employee's mailbox whenever the mailbox exceeded a maximum storage limit.  [Pl.'s Decl. at 1].  When a "freeze" occurred, no emails could be sent from the employee's mailbox until the employee freed enough space

to restore full functionality.  [Pl.'s Decl. at 1].  Notably, Plaintiff does not allege that these "freezes" affected his ability to receive emails.  Plaintiff attests that he experienced "freezes" on several occasions because of AT&T's limits on employee mailbox size. [Pl.'s Decl. at 2].

AT&T's email software, Microsoft Outlook, automatically generated certain responses to emails sent to employee inboxes whenever there was a problem with the delivery of an email sent by Promenta.  [Decl. of Brandy Giordano at ¶ 10].  AT&T confirms that the three arbitration program emails were sent to Plaintiff's work email address, and that there were no automatic replies or undeliverable messages from Plaintiff's account, notwithstanding the email "freezes" alleged by Plaintiff.  [Decl. of Brandy Giordano at ¶ 19].

**LEGAL STANDARD**

When addressing a motion to compel arbitration, a court must first determine which standard of review to apply; *to wit*: either the motion to dismiss standard under Federal Rule of Civil Procedure ("Rule") 12, or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resol., LLC.,* 716 F.3d 764, 771-72 (3d Cir. 2013).  "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery."  *Id.* at 773-74 (internal citations omitted).  Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard."  *Id.*; *see also Griffin v. Credit One Fin.*, 2015 WL 6550618, at *2 (E.D. Pa. Oct. 29, 2015).

Here, the complaint and its supporting documents do not, on their face, indicate the existence of an arbitration agreement.  Therefore, the Rule 56 summary judgment standard of review is applicable to determining the validity and enforceability of the Agreement.[2]

---

[2]     The parties have each submitted sworn declarations regarding the events leading to the purported formation of the Arbitration Agreement, including a copy of the Arbitration Agreement.  This Court has carefully considered Plaintiff's request for the opportunity to conduct limited discovery on the question of

When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In applying a Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772.

The moving party has the burden of showing the court "the absence of a genuine issue of material fact" by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322-23.  The nonmoving party must then rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  The nonmoving party must show more than "some metaphysical doubt as to the material facts," rather, the nonmoving party must "go beyond the pleadings" and "show that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.  The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions."  *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

---

arbitrability and finds that there is a sufficient factual record regarding arbitrability and, therefore, no additional discovery is necessary.

**DISCUSSION**

As noted, Defendant moves to compel arbitration of this matter based on the voluntary arbitration program to which, Defendant contends, Plaintiff agreed by failing to opt out. In opposing the motion, Plaintiff argues that the Arbitration Agreement is invalid and unenforceable as to him. Plaintiff is, however, mistaken.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent–A– Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted). A "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In hearing such a petition, the court "must resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Before compelling arbitration, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement.

*Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).[3]   In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation.  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).  Under Pennsylvania law,[4] "a contract is formed when there is an offer, an acceptance of that offer and an exchange of consideration."  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 494 n.21 (Pa. 2004).

### Formation of the Arbitration Agreement

Plaintiff argues that Defendant has failed to present sufficient evidence to show that the Arbitration Agreement is an enforceable contract under Pennsylvania law.  Defendant counters that there is a valid and enforceable agreement to arbitrate.  Considering the evidentiary record, this Court agrees with Defendant that (1) an offer was communicated to Plaintiff, (2) Plaintiff accepted that offer, and (3) the Arbitration Agreement is supported by consideration.

### 1.  Offer

Pennsylvania courts have "defined an offer as 'a manifestation of a willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  *Beaver Valley Alloy Foundry Co. v. Therma-Fab, Inc.*, 814 A.2d

---

[3]   Plaintiff does not argue that his underlying discrimination claims do not fall within the scope of the Arbitration Agreement.  The Arbitration Agreement covers claims "arising out of or related to [Plaintiff's] employment or termination of employment with the Company" including claims under the "Age Discrimination in Employment Act" and "state statutes and local laws, if any, addressing the same or similar subject matters[.]"  Plaintiff's underlying claims are an ADEA claim and a related state PHRA claim, both alleging age discrimination.  The ADEA claim is expressly provided for, and because the PHRA is a state statute addressing the same "subject matter" as the ADEA—age discrimination—Plaintiff's PHRA claim likewise falls within the Arbitration Agreement. Moreover, both claims arise out of Plaintiff's employment with and termination from AT&T and are, therefore, unquestionably within the scope of the Arbitration Agreement.

[4]   AT&T contends, and Plaintiff does not deny, that Pennsylvania contract law principles govern the Arbitration Agreement at issue.

217, 222 (Pa. Super. Ct. 2002) (quoting *O'Brien v. Nationwide Mut. Ins. Co.*, 689 A.2d 254 (Pa. Super. Ct. 1997); Restatement (Second) of Contracts, § 24). "An offer must be intentional, definite in its terms and communicated, otherwise the minds cannot meet." *Morosetti v. Louisiana Land & Expl. Co.*, 522 Pa. 492, 494 (Pa. 1989).

Applying Pennsylvania law, courts in this district have held that an employer's distribution of an arbitration policy to existing at-will employees—as part of an employee handbook or as a freestanding document—constitutes an offer of continued employment, subject to the terms of the arbitration program. *See*, *e.g.*, *Bracy v. Macy's Retail Holdings, Inc.*, 2020 WL 1953647, at *5 (E.D. Pa. Apr. 23, 2020) (collecting cases). Recently, in holding a similar arbitration agreement to be enforceable under Pennsylvania law, a court in this district found that the defendant put the plaintiff on notice of its offer to enter the agreement when it sent the policy via email to the Plaintiff's work inbox. *Hoffman v. Compassus*, 2019 WL 1791413, at *8 (E.D. Pa. Apr. 23, 2019).

To establish that a valid offer was made, Defendant provides the sworn declaration of Brandy Giordano, AT&T's custodian of records. Based on her review of AT&T's business records, she attests that AT&T used Promenta System to send three separate emails to Plaintiff's work email address advising him of the Arbitration Agreement. In support of her declaration, Giordano provides a screenshot of the results of her query of the Promenta System, which shows that AT&T sent the arbitration emails on December 3, 2011, December 16, 2011, and January 18, 2012 to Plaintiff's work email address. Giordano attests (1) that the subject line of these three emails read "Action Required: Arbitration Agreement," (2) that the body of the emails was identical to that of the "exemplar" email provided as Exhibit 1 to her declaration and included a hyperlink to the text of the Agreement, and (3) that there were no automatic replies or undeliverable messages related to Plaintiff's email address in the Promenta System.

Defendant further argues that because it has provided unrebutted evidence that the Arbitration Agreement was sent to Plaintiff's work address email inbox, it should be entitled to a presumption that these emails were, in fact, received by Plaintiff.  This Court agrees.  Under Pennsylvania law, it is well-established that proof of mailing raises a rebuttable presumption that the mailed item was received by the intended recipient, and this presumption is not nullified solely by testimony denying receipt of the mailed item.  *See Samaras v. Hartwick*, 698 A.2d 71, 73 (Pa. Super. Ct. 1997) (holding that testimony offered by a court administrator was sufficient to raise presumption that a notice was duly mailed and received by the intended recipient).  Accordingly, courts, including this Court, have applied the presumption of delivery in the context of arbitration agreements that were sent through the postal service to the plaintiff and not returned as undeliverable.  *See Griffin v. Credit One Fin.*, 2016 WL 538242, at *2 (E.D. Pa. Feb 11, 2016); *Bracy*, 2020 WL 1953647, at *6; *Gedid*, 2012 WL 691637, at *6.

Here, Defendant asks this Court to extend application of the presumption of delivery from physical mail sent through the postal service, as in *Bracy* and *Griffin*, to electronic mail.[5]  Although the United States Court of Appeals for the Third Circuit has not yet addressed this issue outside of a narrow context,[6] multiple other Courts of Appeals have applied the same presumption applicable to mail sent through the postal service to email communication.[7]  *See Ball v. Kotter*, 723 F.3d 813,

---

[5]    Plaintiff does not challenge AT&T's argument that the presumption of delivery should extend to email communication.

[6]    *See Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 148 (3d Cir. 2008) (noting that § 7502(c) of the Internal Revenue Code affords a presumption of receipt to documents sent by taxpayers through electronic mail).

[7]    Additionally, in federal circuits where the Court of Appeals has not addressed the issue, numerous district courts have chosen to enforce arbitration agreements by extending the presumption to arbitration materials sent via email.  *See, e.g.*, *Abdullah v. Am. Exp. Co.*, 2012 WL 6867675, at *5 (M.D. Fla. Dec. 19, 2012), *report and recommendation adopted*, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013) (applying the presumption of delivery to an email announcement of company's new voluntary arbitration program and

830 (7th Cir. 2013) (finding that a presumption existed that emails were properly sent, received, and read); *Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) ("[w]e agree with the district court that a presumption of delivery should apply to e-mails"); *Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir.2000) (holding that a jury would be able to make the same inference of receipt regarding information sent via electronic mail as it would for information sent via the postal service). This Court finds those holdings of these sister courts persuasive. Moreover, if the Court is free to presume that articles sent through the postal mail service have reached their intended destination, there is no reason why the same presumption should not apply to emails, which convey the same information as physical mail in a faster and more secure manner. As such, Defendant is entitled to a rebuttable presumption that the arbitration emails it sent on December 3, 2011, December 16, 2011, and January 18, 2012, were successfully delivered to Plaintiff's AT&T-issued email address inbox.

"Once this presumption is established, the party alleging that it did not receive the letter has the burden of establishing such, and merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt." *Geise v. Nationwide Life & Annuity Co. of Am.*, 939 A.2d 409, 423 (Pa. Super. 2007) (quoting *Donegal Mut. Ins. Co. v. Ins. Dept.*, 719 A.2d 825, 827 (Pa. Commw. Ct. 1998)). Here, Plaintiff alleges that he "has no recollection of receiving, viewing, or opening" any of the emails at issue. As noted, this contention alone, without corroboration, is insufficient to rebut the presumption that Plaintiff received the arbitration emails.

---

binding the plaintiff to the agreement); *Johnson v. Harvest Mgmt. Sub TRS Corp.--Holiday Ret.*, 2015 WL 5692567, at *3 (S.D. Ind. Sept. 25, 2015) (applying the presumption of delivery to email reminder about company's new arbitration program and binding the plaintiff to the agreement).

Plaintiff advances multiple other theories in an attempt to demonstrate a factual dispute regarding the receipt and content of the arbitration emails.  First, Plaintiff points to the "freezes" he experienced with his AT&T-issued email account.  This allegation, however, does not create a genuine issue of material fact as to his non-receipt of the arbitration emails because Plaintiff only alleges that the "freezes" affected his ability to ***send*** emails, not to ***receive*** them.  Notably, Plaintiff does not allege that he ever failed to ***receive*** an email because of these "freezes," or even that he experienced a "freeze" on or around the three dates the arbitration emails were sent.

Second, Plaintiff argues that Ms. Giordano, AT&T's custodian of records with respect to the arbitration program, is incompetent to testify to the rollout of the program because she assumed the Lead HR Specialist/Generalist role in 2013, two years after the rollout.  Plaintiff is mistaken. Pennsylvania case law is clear that "it is not essential to produce either the person who made the entries or the custodian of the record at the time the entries were made or that the witness qualifying the business records even has personal knowledge of the facts reported in the business record." *Virgo v. W.C.A.B. (Cty. of Lehigh-Cedarbrook)*, 890 A.2d 13, 20 (Pa. Commw. Ct. 2005) (internal citations omitted); *cf. Griffin*, 2016 WL 538242, at *2 (admitting the sworn declaration of an individual that "ha[d] access to said records and is fully familiar with the manner in which they are created and maintained, and has reviewed the records related to the plaintiff's account" although the individual ostensibly did not create the records himself).  Here, it is undisputed that Ms. Giordano had access to Promenta and was familiar with the system through her role as Lead HR Specialist/Generalist for AT&T.  That Ms. Giordano did not personally send the arbitration emails does not create a genuine issue of material fact regarding the distribution and content of the arbitration emails.

Third, Plaintiff argues that Defendant has not conclusively established the content of the arbitration emails because it only produced an "exemplar," and did not produce screenshots of the actual body of the emails.  However, as noted, Plaintiff may not rely on "bare assertions, conclusory allegations or suspicions[,]" *Fireman's Ins. Co. of Newark*, 676 F.2d at 969, and must rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff's mere suspicion that the body of the emails could have differed from the "exemplar" email, in light of Giordano's sworn declaration, fails to create a genuine issue of material fact.  *See Griffin*, 2016 WL 538242, at *2 (compelling arbitration over plaintiff's argument that defendant had not produced the exact agreement governing her account, where defendant produced a sworn declaration that the attached agreement was the "true and correct sample" of the one governing plaintiff's account.).

Fourth, Plaintiff argues that Giordano's sworn statement that AT&T did not receive any automatic replies or undeliverable messages from Plaintiff's account is insufficient, and that he should be given the opportunity to discover how AT&T "handled" messages sent to "frozen" employee mailboxes.  This argument fails for the same reason as the previous one: Plaintiff has not produced any admissible evidence, aside from bare suspicion, to cast doubt on Giordano's sworn statement confirming that no undeliverable message was received from Plaintiff's account. Additionally, as noted above, the "freezes" Plaintiff experienced did not affect his ability to ***receive*** emails.

This Court finds that none of these factual allegations creates a genuine dispute of material fact as to whether Plaintiff received the arbitration emails or whether the content of the emails

matched the "exemplar" provided by Defendant.  Defendant has produced evidence that the arbitration emails were duly sent to Plaintiff, entitling it to the presumption that the emails were, in fact, received by Plaintiff.  Because Plaintiff has failed to rebut that presumption, AT&T has demonstrated that it made a valid offer.

*2.  Acceptance*

Defendant's offer to Plaintiff, communicated by the three arbitration emails and the text of the Arbitration Agreement hyperlinked therein, explained that by failing to opt out of the program before the deadline, Plaintiff was agreeing to the arbitration process set forth in the Arbitration Agreement.  It is undisputed that Plaintiff did not opt out of the Arbitration Agreement and continued to work for AT&T for six years thereafter.  Under Pennsylvania law, continued employment alone is enough to constitute an acceptance of an offer to arbitrate claims between an employer and employee.  *See Venuto v. Insur. Co. of N. Am.*, No. 98-96, 1998 WL 414723, at *5 (E.D. Pa. July 22, 1998) (holding that an at-will employee accepted employer's unilaterally instituted arbitration policy where employee was notified of the policy and continued to work for four years thereafter; "[A]n employee's decision to continue working with an employer for a substantial period of time after the imposition of a new policy demonstrates acceptance of its terms."); *Keller v. Pfizer, Inc.*, 2018 WL 5841865, at *3 (M.D. Pa. Nov. 8, 2018) ("courts have unwaveringly held that continued job performance is a valid method of accepting an agreement to arbitrate in lieu of a signature.").  Here, this Court finds that Plaintiff's continued employment with AT&T for six years after notice and implementation of the voluntary arbitration program constitutes acceptance of the Arbitration Agreement.

Even if continued employment alone was insufficient to signal Plaintiff's acceptance of the Arbitration Agreement, courts applying Pennsylvania law have found that a plaintiff's failure to

opt out, in conjunction with continued employment past the opt-out deadline, constitutes valid acceptance. This is especially true where, as here, failure to opt out is the exact form of acceptance invited by the offer. *See Bracy*, 2020 WL 1953647, at *7 ("Plaintiff manifested her intent to be bound by the terms of the Arbitration program by not returning the opt-out election form on two separate occasions and by continuing to work for the Defendants"); *Hoffman*, 2019 WL 1791413, at *8 (holding that plaintiff's failure to opt out of a voluntary arbitration policy and continued employment with the company sufficiently demonstrated acceptance of the policy); *see also* Restatement (Second) of Contracts 30(1) ("An offer may invite or require acceptance to be made by an affirmative answer in words, or by performing or *refraining from performing a specified act* …") (emphasis added). Here, Plaintiff manifested his intent to be bound by the terms of the Arbitration Agreement by not opting out within the sixty-eight-day period between December 3, 2011 and February 6, 2012, after being given three notices to do so if he wished to not be bound. In light of this failure to opt out, this Court finds that Plaintiff accepted Defendant's offer to enter into the Arbitration Agreement.[8]

---

[8]     Plaintiff's contention that he has "no recollection" of receiving, opening, or viewing the arbitration emails and was, therefore, not "aware" of the existence of the Arbitration Agreement is immaterial. Numerous courts have held that a plaintiff's lack of recollection does not create a genuine issue of disputed fact. *See, e.g.*, *Keller*, 2018 WL 5841865, at *3 (rejecting plaintiff's arguments that she should not be bound by an arbitration agreement because she did not recall entering into the agreement); *Black v. JP Morgan Chase & Co.*, 2011 WL 3940236, at *5 (W.D. Pa. Aug. 25, 2011) (holding that a plaintiff's testimony that she did not recall receiving arbitration agreement did not create a genuine issue of fact as to whether plaintiff chose not to opt out). Furthermore, Plaintiff's argument that he did not purposefully fail to opt out with an intent to be bound to the Arbitration Agreement is unpersuasive. "[I]n assessing whether a party manifested an intent to enter a contract, the Court looks not to inward, subjective intent but, rather, to the 'intent a reasonable person would apprehend in considering the parties' behavior.'" *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331-32 (W.D. Pa. Apr. 28, 2020) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009)). Therefore, it is of no consequence that Plaintiff may not have, in his own mind, had any desire to enter into the Arbitration Agreement, where his objective manifestations unambiguously indicated the opposite.

3. *Consideration*

Plaintiff further contends that the Arbitration Agreement is not a valid contract because there was no consideration to support it. Plaintiff is mistaken. Under Pennsylvania law, continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of, as well as consideration for, an arbitration agreement. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 n.3 (3d Cir. 2002) (continued employment can serve as consideration to support an arbitration clause and render it enforceable); *Alexander v. Raymours Furniture Co., Inc.*, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014) (stating that the "weight of authority" in Pennsylvania finds adequate consideration to support an arbitration agreement where the employee continued to work for the employer after receiving the arbitration agreement). It is undisputed that Plaintiff continued to work for Defendant after receiving the Arbitration Agreement, which alone constitutes valid consideration for the Arbitration Agreement.[9]

Furthermore, mutual promises to arbitrate constitute sufficient consideration. *See Blair*, 283 F.3d at 603–04 ("when both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Marotta v. Toll Bros.*, 2010 WL 744174, at *4 (E.D. Pa. Mar. 3, 2010) (finding valid consideration where both the Plaintiff and Defendant agreed to be legally bound by an arbitration agreement for disputes arising out of Plaintiff's employment). Here, the Arbitration Agreement mutually obliges Plaintiff and Defendant to arbitrate disputes between one another. Either or both of the aforementioned forms of consideration support the Arbitration Agreement at issue.

---

[9]  Plaintiff argues that because his continued employment was not conditioned on participating in the arbitration program, his continued employment cannot be valid consideration. Plaintiff cites no authority to support this contention. To the contrary, in *Bracy,* 2020 WL 1953647, at *7, this Court found that a plaintiff's continued employment was valid consideration after he received notice of an arbitration agreement that did not condition his continued employment on his agreeing to arbitrate.

**Defenses to Enforcement of the Arbitration Agreement: Unconscionability**

Plaintiff also argues that, even if the Arbitration Agreement is valid, it is both procedurally and substantively unconscionable and, therefore, unenforceable. This Court disagrees. In Pennsylvania, unconscionability has both procedural and substantive prongs, and both must be present to render an arbitration agreement unenforceable. *See Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 716 (E.D. Pa. Aug. 14, 2009) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). "The Pennsylvania Supreme Court has defined procedural unconscionability as the 'absence of meaningful choice on the part of one of the parties.'" *Id.* at 717 (quoting *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981)). "Procedural unconscionability is generally found where there is a 'contract of adhesion'—meaning, a contract prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis." *Id.* (citing *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)); *see also Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004). A contract will be deemed procedurally unconscionable when formed through "oppression and unfair surprise." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 235 (3d Cir. 2012) (quoting *Witmer*, 495 Pa. 540, 434 A.2d 1222, 1228 n.16).

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it is a non-negotiable adhesion contract that was presented to him on a take-it-or-leave-it basis. Again, Plaintiff is mistaken. Because the Arbitration Agreement contained an opt-out provision, it was not presented to Plaintiff on a take-it-or-leave-it basis and, therefore, is not an adhesion contract.[10] Moreover, the presence of an opt-out provision "seriously undermines" the contention

---

[10]     Multiple courts have rejected Plaintiff's exact contention—that an arbitration agreement was presented on a take-it-or-leave-it basis—where the agreement gave the plaintiff the opportunity to opt out. *See Fluke v. Cashcall, Inc.,* 2009 WL 1437593, at *8 (E.D. Pa. May 21, 2009) ("[Plaintiff] was given the option to say "no" to the arbitration provision and he was given a full 60 days to do so. In that way, *he had*

that an arbitration agreement is procedurally unconscionable. *Fluke*, 2009 WL 1437593, at *8. Several courts have declined to find arbitration agreements procedurally unconscionable where an opt-out provision gave the plaintiff the ability to reject the agreement without repercussion. *See e.g.*, *Clerk*, 2010 WL 364450, at *8–10 (arbitration provision was not procedurally unconscionable, based on inclusion of thirty-day opt-out clause); *Fluke*, 2009 WL 1437593, at *8 (arbitration provision containing sixty-day opt-out clause was not unconscionable); *Martin v. Delaware Title Loans, Inc.*, No. 08–3322, 2008 WL 4443021, at *4 (E.D. Pa. Oct. 1, 2008) (arbitration provision containing fifteen-day opt-out clause was not procedurally unconscionable). Here, the Arbitration Agreement gave Plaintiff sixty-eight days to opt out of it—a longer period than any of the agreements upheld by the courts in *Clerk*, *Fluke* and *Martin*. This factor heavily favors a conclusion that the Arbitration Agreement is not procedurally unconscionable.[11]

Aside from the opt-out provision, the rollout of the voluntary arbitration program in this case contained multiple procedural safeguards to ensure that Plaintiff was not surprised in any way by the Arbitration Agreement. AT&T sent ***three*** separate notice emails regarding the Arbitration Agreement to Plaintiff's email work address inbox, each with the attention-grabbing subject line "Action Required: Arbitration Agreement." In bold letters, the body of the emails and the

---

*complete control over the terms of the agreement* and *it cannot be said that the arbitration agreement was presented to him on a take-it-or-leave[-]it basis*.") (emphasis added); *Clerk v. ACE Cash Exp., Inc.*, 2010 WL 364450, at *9 (E.D. Pa. Jan. 29, 2010) ("Here, because Plaintiff was given the express opportunity to reject the Arbitration Agreement and failed to do so, *Plaintiff's argument that the Arbitration Agreement was presented on a take-it-or-leave-it basis fails*."); *Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F. Supp. 3d 619, 632 (E.D. Pa. 2015) (noting that an arbitration agreement that did not condition admission into a nursing home on the resident assenting to the agreement "was not a take-it-or-leave-it deal.").

[11]     Plaintiff also points to the difference in bargaining power between him and AT&T as a basis for procedural unconscionability. However, mere inequality of bargaining power does not render a contract or contract term unenforceable. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 229 (3d Cir.1997); *Witmer*, 495 Pa. 540, 434 A.2d 1222, 1228; *Gokhberg v. Sovereign Bancorp, Inc.*, 2011 WL 3862155, at *2 (E.D. Pa. Sept. 1, 2011).

Arbitration Agreement itself advised Plaintiff of the importance of reviewing the Arbitration Agreement, and further provided company hotlines that Plaintiff could call to ask questions about the Arbitration Agreement or to report pressure.  In light of the relatively long opt-out period and other factors indicating procedural fairness, this Court finds no procedural unconscionability.

Because Plaintiff has failed to meet his burden of proving procedural unconscionability, the Court need not delve into an inquiry regarding substantive unconscionability.  *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct."); *Oyler v. Fin. Independence and Resource Educ.*, 2008 WL 275729, at *4 (M.D. Pa. Jan.30, 2008); *Gokhberg*, 2011 WL 3862155, at *4.

**CONCLUSION**

For the reasons stated herein, Defendant's motion to compel arbitration is granted.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*